UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

KEAN CHAMBERS,

                  Defendant.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-6-13

12 Cr. 671 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

      On May 29, 2013, Kean Chambers ("Defendant" or "Chambers") pled guilty to Count One: Misprision of Felony, in violation of 18 U.S.C. § 4, a Class E Felony. For the reasons set forth below, Chambers will be sentenced to time served. Defendant will also be required to pay a special assessment of $100.

**Prior Proceedings**

      On May 29, 2013, Chambers was named in a one-count Superseding Information S1 12 CR 671 (RWS) in the Southern District of New York. Count 1 charges that on August 1, 2012, in the Southern District of New York and

elsewhere, Chambers, having knowledge of an attempted Hobbs Act robbery, failed to disclose and concealed the attempted Hobbs Act robbery from the U.S. Drug Enforcement Administration.

On May 29, 2013, Kean Chambers pled guilty to Count 1 of Superseding Information S1 12 CR 671 (RWS).

Chambers' sentencing is scheduled for December 9, 2013.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

 (2) the need for the sentence imposed —

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

 (4) the kinds of sentence and the sentencing range established for —

  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

 (5) any pertinent policy statement . . . [issued by the Sentencing Commission];

 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

 (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Chambers' personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that document.

In late June 2012, a confidential source ("CS-1") spoke to co-defendant Julius C. Barnes ("Barnes") about a potential robbery of cocaine shipments that would be arriving in Manhattan from Colombia. On July 2, 2012, CS-1, another confidential source ("CS-2") and Barnes, met on a street in Manhattan. CS-2 was equipped with a video-and-audio-recording device during this meeting. Based on the review of the video and audio recording made by CS-2, it was discovered that CS-1 told Barnes that CS-2 was expecting a multi-kilogram shipment of cocaine from Colombia. CS-2 told Barnes that when the cocaine arrived,

CS-2 would meet an unknown individual at a location in Manhattan to receive the drugs and arrange the sale of the drugs to another party for approximately $300,000.

Barnes told CS-2 to call him when the cocaine arrived, and then Barnes and his associates would come to the location and steal the drugs and money by force. Barnes explained that he would commit the robbery with his brother and/or cousin; Barnes agreed to split the stolen money with CS-2 immediately following the robbery. Barnes also asked CS-2, "Is it a problem if the people in the house die?"

Barnes stated that he used to commit drug robberies, but that Barnes' main business now was selling kilograms of cocaine. Barnes explained that he would meet CS-2 immediately after the robbery and show CS-2 the stolen kilograms of cocaine. Barnes agreed to give CS-2 a percentage of the profit made from the sale of each kilogram of stolen cocaine.

On August 1, 2012, at approximately 8:15 p.m., CS-2 again met Barnes, in the vicinity of W. 207th Street and Seaman Avenue in Manhattan. Law enforcement officers surveilled this meeting and observed Barnes arrive on foot.

During this meeting, CS-2 informed Barnes that that the robbery would take place at a building in the area where they were meeting (the "Location"). CS-2 told Barnes to follow CS-2 to the Location. After this meeting, other law enforcement officers observed Barnes leave the meeting with CS-2 and enter a van (the "Van") located in the vicinity of Isham Street and Seaman Avenue in Manhattan.

CS-2 and Barnes arrived at the Location. A marked NYPD vehicle then arrived at the Location and pulled in front of the Van, at which point four males jumped out of the Van and ran away from the Location. Law enforcement officers chased the four males and ultimately apprehended and arrested them. The four males were subsequently identified as Barnes, Chambers, co-defendant Brain Stubbs ("Stubbs"), and co-defendant Kaison Gillespie ("Gillespie").

Upon a search of the Van the following items were recovered: a loaded .45 caliber Hi-Point handgun; a loaded .22 caliber revolver; a loaded 9mm caliber Ruger handgun with a defaced serial number; two bulletproof vests; bleach; ammonia; latex gloves; zip ties; duct tape; an ASP baton; and a riding crop.

After waiving his Miranda rights, Chambers stated to law enforcement agents that on August 1, 2012, his cousin, Gillespie, Barnes, and Stubbs agreed to meet in the Bronx, NY. Chambers agreed to attend that meeting as well.

Barnes, Gillespie, Stubbs and Chambers drove to meet CS-2 on August 1, 2012. On their way to meet CS-2, Barnes stopped at a store to buy bleach and ammonia. When Barnes, Gillespie, Stubbs and Chambers arrived at the Location in the Van and observed the NYPD vehicle, Gillespie yelled, "Run, fucking run, don't get caught with anything."

Barnes, Gillespie, Stubbs and Chambers were arrested on August 1, 2012. There are no applicable role adjustments. As the robbery was a jointly undertaken activity between Barnes, Stubbs and Gillespie, and because firearms were an element of the offense, only Barnes, Stubbs and Gillespie are responsible for the possession of the firearms. Chambers was unaware of the fact that the others were planning a robbery of drugs or that they possessed firearms.

**The Relevant Statutory Provisions**

For Count 1, the maximum term of imprisonment is three years, pursuant to 18 U.S.C. § 4.

For Count 1, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than one year, pursuant to 18 U.S.C. § 3583(b)(3).

For Count 1, the defendant is eligible for not less than one nor more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1).

For Count 1, the maximum fine is approximately $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2012 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to

§ 1B1.11(a). The Court finds the following with respect to the Defendant's applicable offense level, criminal history, recognition of responsibility and term of imprisonment:

Count 1 charges Defendant with misprision of felony. Section 2X4.1 applies to the offense charged in the Superseding Information. Pursuant to § 2X4.1, the base offense level is determined by first determining the offense level for the underlying offense which is § 2B3.1. Pursuant to § 2B3.1, the base offense level is 20. However, pursuant to § 2X4.1, the base offense level is nine levels lower than the offense level for the underlying offense. Accordingly, the base offense level is 11.

Based on the Defendant's statement, the Defendant has shown a recognition of responsibility for the offense. As such, a two-level reduction is warranted, pursuant to § 3E1.1(a).

Accordingly, the total offense level is 9.

The Defendant has no prior criminal convictions. Therefore, Chambers has zero criminal history points and a Criminal History Category of I.

Based on a total offense level of 9 and a Criminal History Category of I, the guideline range for imprisonment is 4 to 10 months. The minimum term of imprisonment may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one month is satisfied by imprisonment, pursuant to § 5C1.1(c).

The guideline range for a term of supervised release is one year, pursuant to § 5D1.2(a)(3).

Because the applicable guideline range is in Zone B of the Sentencing Table, the defendant is eligible for probation provided that the court imposes a condition that substitutes intermittent confinement, community confinement, or home detention for at least four months, pursuant to § 5B1.1(a)(2). If the court imposes probation, the term must be at least one year but not more than five years because the offense level for the instant offense is nine, pursuant to § 5B1.2(a)(1).

The fine range for the instant offense is from $1,000 to $10,000 pursuant to § 5E1.2(c)(3)(A) and § 5E1.2(c)(4). 64. Subject to the defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,412.33 to be used for imprisonment, a monthly cost of $278.95 for supervision, and a monthly cost of $2,244.17 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007)

(quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is not warranted in the instant case.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." Pursuant to 18 U.S.C. § 3553(2)(A), the Court weighs the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense.

This is Chambers' first criminal charge. While under Pretrial supervision, Chambers has remained compliant with his bail conditions. Chambers is gainfully employed at this time. The Defendant has served approximately eight months' imprisonment before his release on bail, which is above the minimum Guidelines range. The above factors warrant a downward departure from the Guidlines.

**The Sentence**

The Defendant will be sentenced to time served

for Count 1.

The Defendant shall not receive a term of supervised release or probation.

It does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

It is further ordered that the Defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for December 9, 2013.

It is so ordered.

**New York, NY**
**December 4, 2013**

_____
ROBERT W. SWEET
U.S.D.J.